IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-CR-3360-MLG |
| | ) | |
| vs. | ) | |
| | ) | |
| **SHELTON ATOLE**, | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this Sentencing Memorandum for this Court's consideration in advance of Defendant Shelton Atole's sentencing hearing on July 7, 2026. Defendant pled to one count of assault resulting in substantial bodily injury to a dating and intimate partner, in violation of 18 U.S.C. §§ 1153, 113(a)(7) pursuant to a Rule 11(c)(1)(B) plea agreement. The United States now asks this Court to impose a mid-guideline sentence of 30 months.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2025, Jane Doe was spending time with Defendant—who was her boyfriend at the time—at Defendant's mother's house. PSR ¶ 14. The two had been drinking and were lying on Defendant's bed when Defendant "got mean" and accused Jane Doe of sleeping with his brother. PSR ¶ 14. Defendant proceeded to physically attack Jane Doe, hitting her repeatedly in the face and head. Jane Doe had to push and kick Defendant to get him off her so that she could attempt to flee the house. PSR ¶ 14. Defendant chased Jane Doe as she tried to leave, but Jane Doe was eventually able to get away from Defendant. PSR ¶ 14.

After leaving the residence, Jane Doe eventually called a friend, F.O., who picked Jane Doe up and brought her back to her house. Concerned about Jane Doe's condition, F.O. called

Jicarilla Apache Police dispatch in Dulce to report the assault and to request Emergency Medical Services (EMS) to assist with Jane Doe's injuries.  PSR ¶ 8.  The responding Jicarilla Apache Police Officer found Jane Doe in a back room.  Her face was swollen with several bruises on both sides, and her eyes were bloodshot likely due to trauma to the area caused by physical force.  PSR ¶ 8.  The officer took photos of Jane Doe's injuries, which are included in Doc. 56.  Once EMS arrived, the responders determined that Jane Doe's injuries were so severe that she needed to be transported to the San Juan Regional Medical Center in Farmington.  PSR ¶ 8.  Jane Doe originally agreed to be transported to the hospital, but she ultimately left without being seen by a doctor.  PSR ¶ 15.

On July 28, 2025, five days after the assault, Jane Doe participated in an interview with law enforcement.  While meeting with Jane Doe, law enforcement observed that she was still suffering from very serious bruising from the assault.  Agents again documented those injuries, and those photos are also included in Doc. 56.  During the interview, Jane Doe recounted the events of July 23, 2025.  She also described a separate assault Defendant had committed against her several weeks prior, in June 2025.  The June 2025 assault bore substantial similarities to the charged offense: Jane Doe and Defendant had been drinking, when Defendant suddenly accused Jane Doe of sleeping with his brother.  Defendant got on top of Jane Doe and hit her multiple times in the head and face.  When Jane Doe tried to leave the room, Defendant hit her again, causing a bloody nose.  PSR ¶¶ 11-12.  Jane Doe also suffered a black eye, facial swelling, and bruising to her head as a result of the June assault.  Jane Doe reported this assault to tribal police, and Defendant was arrested.  However, Defendant bonded out shortly after his arrest and was placed under a Jicarilla Apache Tribal Court order prohibiting him from contacting Jane Doe.  PSR ¶ 12.  Despite this no-contact order, Defendant contacted Jane Doe shortly after he was

released from custody.  Defendant was under this no-contact order at the time he committed the charged offense.

Around this same time, Defendant was arrested on unrelated charges.  While he was detained by tribal authorities, Defendant once again contacted Jane Doe in violation of the no-contact order.  In a recorded call, Jane Doe tells Defendant that she has "two black eyes," her "cheek is all swollen," and her "chin's all fucked up too."[1]

Jane Doe was interviewed by Probation on March 30, 2026.  In that interview, she explained the emotional toll that this experience has taken on her.  She ended up leaving her job several weeks after the assault due to feeling like members of the community were glaring at her and looking at her injuries.  Jane Doe stated that it took approximately two and half months for her to physically heal after the assault, and that she still experiences occasional pain in her jaw as a result of the assault.  PSR ¶ 25.

On August 26, 2025, Defendant was charged by federal indictment with one count of Assault Resulting in Substantial Bodily Injury to a Dating and Intimate Partner, in violation of 18 U.S.C. §§ 1153, 113(a)(7).  Defendant has been detained on this charge since his arraignment. On January 15, 2026, Defendant pled guilty to the single count charged in the indictment.

Probation issued the PSR on April 7, 2026.  Doc. 29.  It determined that the applicable guideline was § 2A2.2 (aggravated assault) because Jane Doe suffered serious bodily injury.  On April 21, 2026, Defendant objected to the serious bodily injury finding, and the United States opposed that objection.  *See* Docs. 54, 56, 57.  After the parties completed briefing, Probation issued an addendum to the PSR maintaining its position that Jane Doe suffered serious bodily injury.  Doc. 58.

---

[1] A copy of this recording was produced to defense in discovery as BN 90.

## II.    SENTENCING GUIDELINES COMPUTATION

The United States submits that the applicable sentencing guideline range is as follows:

| ACTION | NUMBER | REFERENCE OR COMMENT |
|---|---|---|
| Base Offense Level | 14 | USSG § 2A2.2(a); 2A2.3(c)(1) |
| Adjustment – Serious Bodily Injury | +5 | USSG § 2A2.2(b)(3)(B) |
| Adjustment – Violation of Protective Order | +2 | USSG § 2A2.2(b)(6) |
| Adjustment – Acceptance | -3 | USSG § 3E1.1 |
| Total Offense Level | 18 | |
| Estimated Criminal History Category | III | |
| Advisory Sentencing Range (months) | 27-33 | |

## III.    ARGUMENT

The United States Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 233 (2005).  A district court cannot presume that a guideline sentence is reasonable and must conduct an analysis using both the guidelines and the sentencing statutes. *Rita v. United States*, 551 U.S. 338, 347-48 (2007).

The statutory sentencing factors a court must consider include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"  18 U.S.C. § 3553(a)(1), (2)(A)-(D).  A sentencing court must also consider the sentencing range established by the guidelines for the applicable offense, as well as the need to avoid unwarranted sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(4)(A), (6).  The United States submits that these factors support a mid-guideline sentence of 30 months.

**A. The Nature and Circumstances of the Offense and Defendant's History and Characteristics.**

The nature and circumstances of the offense and the history and characteristics of the defendant include the conduct surrounding the offense for which the defendant was convicted, as well as his character and background. *See United States v. Gantt*, 679 F.3d 1240, 1250 (10th Cir. 2012); *United States v. Sanders*, 2024 WL 1434088, at *6 n.4 (10th Cir. Apr. 3, 2024) (unpublished) (quoting 18 U.S.C. § 3661).

The nature and circumstances of Defendant's offense warrant a substantial period of incarceration. At the time Defendant committed the assault, he was under a no-contact order prohibiting him from having any contact with Jane Doe due to a separate assault on Jane Doe several weeks prior. In total disregard of this order, Defendant reached out to Jane Doe after being released from tribal custody and eventually committed the assault that led to the instant charges. Even after committing the second assault, with the tribal no-contact order still in place, Defendant *again* contacted Jane Doe while in tribal custody for unrelated reasons. The nature and circumstances of this offense demonstrate that Defendant has engaged in a very dangerous pattern of committing violence against Jane Doe and disregarding court orders designed to ensure Doe's protection.

The circumstances of the charged offense are particularly concerning when the Court considers Defendant's criminal history. Jane Doe is not the first, or even the second, of Defendant's intimate partners to suffer violence at Defendant's hands. In 2011, Defendant was charged in tribal court with domestic violence after repeatedly punching his then-girlfriend in the face after getting "upset in relation to something with his brother." PSR ¶ 84. The victim in that case suffered a cut and swelling to her nose, and bruising to her right eye. PSR ¶ 84.

5

In 2021, Defendant was charged with assaulting a different girlfriend.  Similar to the other incidents discussed herein, Defendant accused the victim of sleeping with her cousins before attacking her.  He pushed the victim, hit her in the head, and slammed her head against the wall.  PSR ¶ 89.  When the victim tried to escape, she tripped and fell to the floor, where Defendant repeatedly kicked her in the ribs.  PSR ¶ 89.  The victim was taken to the emergency room after the assault and was later flown to Memorial Hospital in Colorado Springs due to the severity of her injuries.  She was hospitalized in Colorado Springs for approximately a week, four days of which were spent in the Intensive Care unit.  The victim's injuries included subdural facial fractures, rib fractures, subdural hemorrhaging, and retinal detachment.  PSR ¶ 89.  She suffered long-term damage to her vision out of her left eye and later realized that she could have died from the assault.

Defendant has engaged in a pattern of violence against intimate partners that has spanned over a decade.  Each of the incidents, including the charged offense, bear alarming similarities: the incidents begin with an accusation by Defendant that the victim is sleeping with someone else, then Defendant proceeds to violently attack the victim.  As the 2021 incident demonstrates, any of these assaults can easily escalate into a near-death experience for the victim.  This violent history indicates that Defendant poses a serious danger to his community and warrants a substantial sentence of imprisonment.

**B.  A 30-Month Sentence is Necessary to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment and Adequate Deterrence.**

A mid-guideline sentence is also necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence both to Defendant and to others.  Over 37% of women in New Mexico experience intimate partner violence at some point in their lives.  *2025 Annual Report to Gov. Michelle Lujan Grisham* at 11,

New Mexico Intimate Partner Violence Death Review Team ("2025 Annual IPV Death Review Report"), available at

https://iprsoftwaremedia.com/175/files/20256/New%20Mexico%20Intimate%20Partner%20Violence%20Death%20Review%20Annual%20Report%202025.pdf (last accessed June 22, 2026).

At a minimum, Defendant is responsible for inflicting this type of violence on three women in at least four incidents reported to law enforcement. Defendant's offense conduct and his history of domestic violence demonstrate that he has not internalized the seriousness of these actions. These prior assaults were reported to law enforcement, left one victim with life-threatening injuries, and resulted in a no-contact order prohibiting Defendant from contacting the victim in this case. None of these consequences were sufficient to deter Defendant from committing the instant offense. A mid-guideline sentence of 30 months is therefore necessary not only to reflect the seriousness of and provide just punishment for Defendant's violent conduct, but also to deter Defendant and others from perpetuating the epidemic of intimate partner violence in the future.

### C. A Guideline Sentence Would Not Create Unwarranted Sentencing Disparities Between Defendants Who Have Committed Similar Acts.

Defendant's sentencing memorandum focuses substantially on supposed disparities between the sentence Defendant faces in federal court and the sentence he would face if he were sentenced for the same conduct in state court. *See* Doc. At 1-5. This focus is misguided for several reasons.

First, to the extent Defendant urges the Court to reject a guideline sentence on the basis that it would create an unwarranted sentencing disparity as compared to defendants sentenced in state court for similar acts, the Tenth Circuit has expressly held that such a consideration is improper under 18 U.S.C. § 3553(a)(6). In *Begay*, the Tenth Circuit explained: "[T]he purpose of § 3553(a)(6) is not to prevent disparities between state and federal sentences, but rather to

prevent disparities in sentences among <u>federal</u> defendants.  Were the sentencing court to conform a federal sentence to a state sentence, it would undermine this goal."  974 F.3d 1172, 1176 (10th Cir. 2020) (citation omitted).  The Tenth Circuit therefore made clear that "differences in sentences imposed in state and federal courts are to be expected." *Id.*  Indeed, to vary downward because Defendant may be sentenced less harshly in state court would create precisely the type of sentencing disparity § 3553 aims to prevent.

Moreover, this argument presupposes that state courts' more lenient treatment of intimate partner violence offenses is preferable and better serves the goals of federal sentencing. However, a recent report by the New Mexico Intimate Partner Violence Death Review Team to the Governor of New Mexico raised concerns about the leniency of state court sentences for these types of offenses.  The report concluded that in several cases of intimate partner violence that ultimately ended in a fatality, prior sentences had been especially lenient or dismissed.  2025 Annual IPV Death Review Report at 23.  Accordingly, the report urged courts to consider a defendant's prior criminal history at sentencing.

Here, we have a defendant who has assaulted multiple intimate partners and who was in violation of a no-contact order at the time he committed the instant offense against Jane Doe. For these prior assaults, he has repeatedly received the type of lenient treatment he now requests from this Court, due both to the enormous challenges victims of these types of offenses face in pursuing justice, as well as the limited jurisdiction of tribal courts.  The guideline range for this offense accurately reflects Defendant's conduct and history, and any lesser sentence he may hypothetically receive where he sentenced in state court does not justify a downward variance.

8

**CONCLUSION**

Based on the foregoing, the United States respectfully requests that the Court sentence Defendant 30 months' imprisonment.

Respectfully submitted,

**TODD BLANCHE**
Acting Attorney General

**RYAN ELLISON**
First Assistant United States Attorney

*/s/ Electronically filed June 22, 2026*
**MEG TOMLINSON**
Assistant United States Attorney
201 3rd St. NW
Albuquerque, NM 87102
Meg.melick@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this the 22nd day of June, 2026, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

*/s/ Electronically filed June 22, 2026*
**MEG TOMLINSON**
Assistant United States Attorney
201 3rd St. NW
Albuquerque, NM 87102

10